UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

TERESSA WILLIAMS,                    )
    Plaintiff,                   )
                                 )
                                 )
        v.                   ) C.A. NO. 12-cv-30176-MAP
                                 )
ROBERT F. KENNEDY CHILDREN'S         )
ACTION CORPS, INC.,                  )
    Defendant.                   )

MEMORANDUM & ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(Dkt. Nos. 34 & 45)

August 6, 2014

PONSOR, U.S.D.J.

I.  INTRODUCTION

Plaintiff Teressa Williams has brought suit against her former employer alleging disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111(8), and Mass. Gen. Laws ch. 151B. She has also asserted a claim for wrongful termination in violation of public policy. On January 17, 2014, Defendant Robert F. Kennedy Children's Action Corps, Inc., filed a Motion for Summary Judgment. (Dkt. No. 34.) Plaintiff responded, on February 24, 2014, with a cross-motion for partial summary judgment. (Dkt. No. 45.) Because Plaintiff

has failed to establish a genuine dispute that she was disabled, that Defendant suspended her for a retaliatory reason, or that she was constructively discharged, the court will allow Defendant's motion and deny Plaintiff's cross-motion.

## II.  BACKGROUND[1]

### A.  Facts

Defendant, Robert F. Kennedy Children's Action Corps, Inc., is a private, non-profit organization that operates a residential program in South Hadley, Massachusetts.  It provides services to teenage girls who have certain behavioral problems, have experienced trauma as a result of abuse or neglect, have been adjudicated delinquent, or have been in the custody of the Department of Youth Services ("DYS").  All employees of Defendant are required to complete "Therapeutic Crisis Intervention" ("TCI") training

---

[1]  Unless otherwise noted, the facts are drawn, in the light most favorable to the non-moving party, from Defendant's Statement of Material Facts (Dkt. No. 36), Plaintiff's Statement of Material Facts in Support of Partial Summary Judgment (Dkt. No. 47), and Plaintiff's Statement of Disputed Material Facts in Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 52), along with the documents referenced therein.

and then pass an annual examination.  If an employee fails the examination, he or she is permitted to re-take it. However, Defendant has a practice of disciplining employees who fail to appear for the exam and who fail to contact it to reschedule.  (Shanley Aff. ¶ 12, Dkt. No. 38 at 2.)

In July 2009, Plaintiff Teressa Williams met Melissa King, an employee of Defendant, at a job fair.  Shortly thereafter, Defendant hired Plaintiff as a per diem childcare worker and subsequently promoted her to full-time status.  In September 2009, Plaintiff completed a TCI training course and passed the required certification test. In preparation for that exam, Plaintiff informed the TCI trainer -- an individual who did not work directly for Defendant -- that she needed special assistance.  Thus, the trainer worked one-on-one with her, engaged in role-playing activities with her, and highlighted important information that would appear on the test.  Defendant was not aware that this extra help was provided to Plaintiff.  (King Dep. 72:3-73:15, Dkt. No. 37, Ex. 1 at 7; Prude Dep. 25:8-21, Dkt. No. 37, Ex. 3 at 5; Shanley Aff. ¶ 6, Dkt. No. 38 at 2.)

In February 2010, Plaintiff resigned from her full-time

-3-

position but continued to work in a per diem capacity.
Then, in April 2010, after Ms. King was promoted to Program
Director, Plaintiff was offered the position of Assistant
Supervisor. As part of the promotion, she was required to
re-take the TCI examination. She took a refresher course on
September 15 and 16.

Immediately before the exam on September 16, Plaintiff
informed Ms. King that because of certain learning problems
she did not believe she could pass. Plaintiff told Ms. King
that she had a different style of learning and that group
instruction was difficult for her. Ms. King offered -- and
Plaintiff accepted -- the opportunity to complete the test
in a separate, quiet area. Defendant also provided
Plaintiff extra time to complete the exam. Nonetheless, in
the middle of taking the test Plaintiff stated that she
could not do it, stood up, and left.

After this incident, Plaintiff informed her immediate
supervisor, Angela Prude, about her learning problems.
According to Plaintiff, she emphasized her need for extra
one-on-one training. Ms. Prude and Ms. King informed
Plaintiff that they would provide any accommodation she

-4-

needed.

In late September 2010, Plaintiff was involved in a car accident and was out of work for one week. Before she took this leave of absence, she became aware of a number of incidents respecting the staff and children at the facility. She heard about -- but did not witness -- bullying, inappropriate physical contact, and drug use. On September 29, Plaintiff anonymously reported these incidents, pursuant to Mass. Gen. Laws ch. 119, § 51A, to Defendant and DYS.

The next day, Ms. King, who was, according to Plaintiff, annoyed about the report, convened a staff meeting to discuss it. Subsequently, Plaintiff contends, another employee told Ms. King that Plaintiff was the source of the anonymous letter.

On October 5, 2010, Ms. Prude called Plaintiff to confirm her return date and to inform her that she would need to retake the TCI exam on October 7. Plaintiff told Ms. Prude that she had a doctor's note prohibiting her from working more than eight hours straight and that she was already scheduled to work the night shift on October 6. Ms. Prude, however, told Plaintiff that the date could not be

-5-

changed because her TCI certification had expired.  During
the call, Plaintiff also expressed concerns about her
ability to pass the examination, and Ms. Prude indicated
that she would identify key portions of the exam for review
and leave notes in Plaintiff's mailbox.

When Plaintiff arrived to work on October 6, 2010, she
found no notes in her mailbox.  She called Ms. Prude, and
together they reviewed the material.  The parties dispute
whether Plaintiff then informed Defendant that she would
still not attend the exam.  Plaintiff states that she left a
note for Ms. King early on October 7, explaining her need
for additional help.  Ms. King contends that she did not
receive the note until the late afternoon of October 7.

On October 7, Plaintiff failed to take the test.  As a
result, Ms. King spoke with David Strong, the Director of
Juvenile Justice Programs for Defendant, who told Ms. King
to terminate Plaintiff.  After Ms. King did so, Plaintiff
contacted Mr. Strong and explained why she was unable to
take the examination at that time.  That same day, Human
Resources advised Mr. Strong to rescind the termination, as
he had failed to obtain appropriate approval.  Mr. Strong

-6-

did so and informed Plaintiff that she was suspended <u>with</u> pay until she passed the test.

The next day, October 8, Mr. Strong called Plaintiff and told her that she could take the TCI exam on October 12. The precise details of their conversation are disputed, though both parties agree that Plaintiff became upset and hung up on Mr. Strong. Plaintiff claims she called back and explained her disabilities to Defendant; Defendant insists that, while Plaintiff talked generally about struggling with learning, she never specified what more she wanted Defendant to do to assist her.

On October 12, 2010, Plaintiff again failed to appear for the TCI examination. That same day she filed for unemployment benefits. Three days later, Mr. Strong sent Plaintiff a letter stating that she was suspended <u>without</u> pay until she passed the exam or until they met to discuss the situation. After responding with a single letter on October 22, in which she disagreed with Defendant's characterization of their prior communication, Plaintiff ceased all contact with Defendant. Defendant ultimately terminated Plaintiff on January 3, 2011.

-7-

B.   Evidence of Disability

At the heart of Plaintiff's claim is her allegation that she was disabled.  To substantiate this, she offers her own testimony and two pieces of additional evidence.  The first is a letter from a medical provider in October 2008 stating, "Patient is starting treatment for mental health issues that effects [sic] her memory. . . . In the meantime [patient] would benefit from added support for learning and educational assessment."  (Dkt. No. 48, Ex. 11.)

The other piece of evidence is an e-mail dated August 1, 2013, from Mia Davis, MSWLCSW.  Ms. Davis began treating Plaintiff on October 29, 2010.  In the 2013 e-mail, Ms. Davis stated that Plaintiff suffered from depression, anxiety, and post-traumatic stress disorder ("PTSD").  She added, "In regards to Mrs. Williams [sic] ability to learn in a group setting and prepare for tests, her mental health condition would make these tasks extremely difficult if not impossible without supports/accommodations."  (Dkt. No. 48, Ex. 8.)

C.   Procedural History

On October 10, 2012, Plaintiff filed this suit
asserting five counts against Defendant.  Specifically, she
claims: (1) discrimination based on disability in violation
of the ADA, 42 U.S.C. § 12111(8); (2) discrimination based
on disability in violation of Mass. Gen. Laws ch. 151B, §
4(16); (3) retaliation in violation of the ADA, 42 U.S.C. §
12203; (4) retaliation in violation of ch. 151B, § 4; and
(5) wrongful termination in violation of public policy.

On January 17, 2014, Defendant moved for summary
judgment on all five counts.  (Dkt. No. 34.)  Plaintiff
opposed that motion and filed her own motion for partial
summary judgment on Counts I and II -- her disability
discrimination claims.  (Dkt. No. 45.)  Counsel appeared for
argument on April 22, 2014, and the court took the matter
under advisement.

### III.  DISCUSSION

On summary judgment, the facts and all reasonable
inferences that might be drawn from them are viewed in the
light most favorable to the non-moving party.  Pac. Ins.
Co., Ltd. v. Eaton Vance Mgmt., 369 F.3d 584, 588 (1st Cir.
2004).  When addressing cross-motions for summary judgment,

"the court must consider each motion separately, drawing inferences against each movant in turn." <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1 (1st Cir. 1997) (citation omitted). Summary judgment is appropriate if no genuine dispute of fact exists, and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

Plaintiff presents three sets of claims. First, she alleges disability discrimination under federal and state law. Second, she raises two claims for retaliation. Finally, she believes she was terminated in violation of public policy. As the following analysis will show, Plaintiff cannot succeed on any count.

A.   <u>Disability Discrimination (Counts I & II)</u>

A plaintiff can assert a disability discrimination claim in one of two ways. 42 U.S.C. § 12112. First, he or she can utilize a "disparate treatment" theory by alleging that an employer treated him or her differently "because of" a disability.[2]  Alternatively, a plaintiff can utilize a

_____

[2]  Though it is not addressed in the parties' memoranda, in her complaint, Plaintiff appears to allege a disparate treatment theory under count II.  For the reasons described below in the retaliation context -- specifically Defendant's legitimate reason for its decisions and the lack

-10-

"reasonable accommodation theory." Under this theory, an employer can be held liable for failing to provide a requested, reasonable accommodation. This is the theory most relevant for the present dispute.

To establish discrimination under this latter theory, a plaintiff must show: (1) she suffered from a disability as defined by the ADA and a handicap as defined by ch. 151B; (2) she was a "qualified person" capable of performing the essential elements of her job with or without an accommodation; and (3) the employer knew of the disability but did not accommodate it upon a request. <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 237 (1st Cir. 2002). Critically, "[a]n employer's duty to accommodate relates only to existing disabilities," at the time of the individual's employment. <u>Santiago Clemente v. Exec. Airlines Inc.</u>, 213 F.3d 25, 32 n.4 (1st Cir. 2000)(citation omitted). State law generally tracks its federal counterpart. <u>Jones v. Nationwide Life Ins. Co.</u>, 696 F.3d 78, 86 (1st Cir. 2012).

The parties primarily dispute the first and third prong

_____

of evidence respecting pretext -- Defendant is entitled to summary judgment to the extent such a claim is asserted.

of Plaintiff's claim.  They disagree that Plaintiff was
disabled at the time of her employment and that she
requested a reasonable accommodation that Defendant then
denied.  Ultimately Plaintiff's claim falters at the first
step -- she has provided insufficient evidence to allow a
jury to conclude that she was disabled at the time of her
employment with Defendant.  At the third step, she has also
failed to show that Defendant rebuffed her request for an
accommodation.  She was therefore not entitled to one.

The ADA defines disability as "(A) a physical or mental
impairment that substantially limits one or more major life
activities of [an] individual; (B) a record of such an
impairment; or (C) being regarded as having such an
impairment."  42 U.S.C. § 12102(1).  To move forward under
subsection A -- the existence of an actual disability, as
Plaintiff alleges here -- an individual must show that (1)
she suffered from a mental or physical impairment; (2) that
this impairment limited a life activity that qualified as
"major"; and (3) the impairment substantially limited that
major life activity.  Carreras v. Sajo, Garcia & Partners,
596 F.3d 25, 32 (1st Cir. 2010).  The requirements for

-12-

establishing a "handicap" in Massachusetts are the same.
See Godfrey v. Globe Newspaper Co., Inc., 457 Mass. 113, 119
(2010).

In response to a series of Supreme Court decisions
narrowing the definition of a disability, Congress amended
the ADA with the 2008 ADA Amendment Act ("ADAAA"). That Act
commands courts to construe the definition of disability in
favor of broad coverage, 42 U.S.C. § 12102(4)(A), and to
focus on an employer's actions rather than the extent of an
employee's disability.[3]  29 C.F.R. § 1630.2.  In essence,
Congress wanted courts to temper their scrutiny when
considering the impact an individual's impairments have on
his or her ability to undertake major life activities.

It is on the first part of the analysis -- evidence
establishing some specific, mental impairment -- where
Plaintiff fails.  Although the ADAAA counsels a court to
broaden its view of what constitutes a disability, no
authority suggests that the ADAAA was intended to supplant

---

[3]  Massachusetts made no such changes to the definition
of handicap, and it is not evident whether post-ADAAA law
applies to the state claim.  However, since Plaintiff cannot
succeed under the more Plaintiff-friendly ADAAA changes, she
cannot succeed under the previous, more stringent standard.

the requirements of Fed. R. Civ. P. 56 and simply allow a
party to move forward without actual evidence of an
impairment. "A person alleging a disability protected by
the ADA has a burden of establishing with medical evidence
the existence of the alleged disability . . . . To hold
otherwise would . . . allow anyone with any kind of
condition, regardless of the severity" to claim disability.
Kalekiristos v. CTF Hotel Mgmt. Corp., 958 F. Supp. 641, 657
(D.D.C. 1997)(citation omitted).

   Plaintiff, believing that she satisfies this burden,
contends that she suffered from an unspecified learning
disability while Defendant employed her. She submits three
pieces of evidence corroborating that claim.

   First, Plaintiff presents an e-mail from her therapist,
dated August 1, 2013, diagnosing Plaintiff with PTSD,
depression, and anxiety. In that letter, the therapist
stated that Plaintiff had difficulty learning in group
settings and preparing for tests. (Dkt. No. 48, Ex. 8.)

   This letter, however, does not shed light on
Plaintiff's disability at the time of her employment, thus
rendering it irrelevant. Santiago Clemente, 213 F.3d at 32

-14-

n.4; Fed. R. Evid. 402 & 403.  Plaintiff's therapist did not

begin to work with Plaintiff until <u>after</u> Plaintiff was

suspended without pay in October 2010 and <u>after</u> Plaintiff

applied for unemployment benefits.  Though she classifies

Plaintiff's issues as "chronic," she does not state -- nor

presumably could she -- that the issues were prevalent

<u>before</u> she began treating Plaintiff.  At best, this evidence

suggests that Plaintiff suffered from a disability or

handicap at some point after October 29, 2010, but not

necessarily at the time of her employment.

The other pieces of evidence Plaintiff offers are

temporally relevant, and thus the question is whether they

are sufficient to send the case to a jury.  Here, Plaintiff

points to a 2008 note from her primary care physician

stating that she suffered from "mental health issues that

effects [sic] her memory."  (Dkt. No. 48, Ex. 11.)  She also

invokes her own testimony, in which she described her

difficulty taking examinations, remembering certain

information, and learning in group settings.  She classified

herself as having a learning disability and having a

different learning style.  (Williams Dep. 78:16-18, Dkt. No. 48, Ex. 9 at 78.)

These two pieces of evidence, however, would not permit a jury to conclude that Plaintiff suffered from a specific (or even unclassified) mental impairment.  As the First Circuit has said, a plaintiff at summary judgment must provide "significantly probative evidence that, <u>inter alia</u>, she is a qualified individual with a disability."  <u>Santiago Clemente</u>, 213 F.3d at 30 (citation omitted).  Though a jury might determine that Plaintiff had certain difficulties, or even certain limitations, the evidence does not establish any medical impairment that produced those problems.  <u>See</u> Kevin Barry, Brian East, Marcy Karin, <u>Pleading Disability After the ADAAA</u>, 31 Hofstra Lab. & Emp. L.J. 1, 7 (2013) (noting that "nearly any <u>diagnosis</u> will suffice" to satisfy the impairment element)(emphasis added); M. Patrick Yingling, <u>Learning Disabilities and the ADA: Licensing Exam Accommodations in the Wake of the ADA Amendments Act of 2008</u>, 59 Clev. St. L. Rev. 291, 293 (2011)(saying that "[i]n general, learning disabilities include a wide range of cognitive disorders, the most common of which is dyslexia, a

reading impairment"). Although this requirement to provide

medical evidence of a diagnosis is not onerous, Plaintiff

has simply failed to do so here.[4]

Even if, arguendo, this were sufficient to show that

Plaintiff suffered from an impairment, it is still woefully

inadequate to satisfy the other elements of a disability.

Learning is certainly a major life activity. 29 C.F.R. §

1630.2(i)(1)(i). However, the record here provides nothing

but broad assertions, without any medical testing or

support, that Plaintiff was substantially limited in her

ability to learn. Indeed, the evidence is practically

silent on the extent of any such limitation, thereby making

it impossible for a juror to adequately determine

Plaintiff's abilities. See Gill v. Ryder Integrated

Logistics, 10-11318-DJC, 2012 WL 2577561 at *4 (D. Mass.

July 3, 2012)(noting that though the analysis is fact

_____

        [4] There exists a dearth of cases dismissing a
disability claim on these grounds. Instead, the bulk of
cases rejecting an employee's claim center on whether the
impairment substantially limits a major life activity. See
e.g., McDonough v. Donahoe, 673 F.3d 41, 47 (1st Cir. 2012).
This is presumably because a single diagnosis by a medical
provider will satisfy the first element. This case is
therefore somewhat unique in that Plaintiff fails to provide
evidence that meets that minimal threshold.

-17-

specific on this element, there must be sufficient evidence
to allow a reasonable juror to conclude that the impairment
"substantially limited" a major life activity.)  Therefore,
even assuming that Plaintiff's evidence were enough to show
that she suffered from an impairment, she would still not be
classified as "disabled" under the statute.

The court does not question Plaintiff's belief that she
suffers from difficulty with traditional learning models.
However, the burden at this stage of litigation is to come
forth with probative evidence establishing the existence of
a disability at the time of her employment.  If Plaintiff's
evidence were considered sufficient to go to a jury, any
employee could come into court -- relying solely on his or
her own statements and a cryptic note from a doctor --
alleging difficulties with work and asserting a violation of
the ADA.  If Rule 56 has any meaning, it certainly requires
more than this nominal level of proof.  Accordingly,
Plaintiff fails at the first stage of the analysis and
cannot move forward on her disability discrimination claims.

Although Plaintiff's main failure relates to the first
step of the analysis, a final note respecting her request

for an accommodation is necessary.  Even if Plaintiff could

establish a disability, the record is clear that Defendant

did not deny Plaintiff a requested reasonable accommodation.

The undisputed evidence shows that Defendant attempted to

work with Plaintiff and did accommodate her in a number of

ways.  More importantly, it is not clear what, as a

practical matter, Plaintiff wanted in the form of "one-on-

one" training, or how that assistance differed from the help

that Defendant actually provided her.  (Prude Dep. 52:7-11,

Dkt. No. 37, Ex. 3 at 9.)  Finally, Plaintiff, in refusing

to take the test and then severing the employment

relationship, was herself responsible for the breakdown in

communications and left Defendant in the dark about what she

in fact wanted and, she claims, needed.  Ultimately, this

provides an independent justification for granting summary

judgment for Defendant on these two counts.

B.    Retaliation (Counts III & IV)

       In the absence of direct evidence of retaliation, the

familiar three-step McDonnell Douglas framework applies to

retaliation claims.   Hodgens v. Gen. Dynamics Corp., 144

F.3d 151, 160-61 (1st Cir. 1998).  First, a plaintiff must

establish a prima facie case of retaliation. If the plaintiff establishes his or her case, the burden of production shifts to the defendant to offer a legitimate, non-retaliatory reason for the adverse employment action. Id. If it does so, the ultimate burden of persuasion rests on the plaintiff to prove that the reason offered by the defendant was a pretext for retaliation. The standard for retaliation under state law is the same as its federal counterpart. Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996).

Plaintiff believes she was retaliated against for taking two actions. First, she contends that she was retaliated against for requesting an accommodation. Second, she argues that Defendant retaliated against her for refusing to take the TCI examination. Ultimately, the evidence is devoid of any evidence showing retaliation, and therefore Plaintiff cannot succeed.

1.   Prima Facie Case

To establish a prima facie case of retaliation, a plaintiff must show: (1) that she exercised a protected right; (2) the employer took an adverse employment action

against her; and (3) there was a causal connection between the protected activity and the adverse employment activity. Hodgens, 144 F.3d at 161.

Requesting an accommodation constitutes a protected activity for retaliation purposes. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004). As discussed above, Plaintiff was not entirely clear in her request for an accommodation. However, the court will assume for purposes of the motion that Plaintiff's request for some assistance -- one, it should be noted, Defendant responded to with a number of accommodations -- is enough to constitute a protected activity.

Plaintiff's contention that her refusal to take the TCI examination is also a protected activity is a more dubious proposition. Plaintiff, though she broadly cites to the ADA, provides no authority justifying the conclusion that the refusal should be considered protected. Indeed, it is difficult to see how refusing to comply with a critical component of her job is comparable to a protest against a practice "made unlawful" by the ADA. 42 U.S.C. § 12203(a). Absent any authority holding otherwise, Plaintiff cannot

transform a failure to satisfy a requirement of her

employment into a protected action.

Moving on, Plaintiff undisputedly suffered an adverse

employment action.  On October 15, 2010, Defendant suspended

Plaintiff without pay.  This is clearly sufficient for

Plaintiff to move forward.  Booker v. Mass. Dep't of Public

Health, 527 F. Supp. 2d 216, 225 (D. Mass. 2007)(stating

that a suspension without pay satisfies the adverse

employment action test).[5]

Plaintiff's final prima facie task is to establish

causation.  To do so, Plaintiff points to the timing of

events, her testimony respecting her co-workers' attitudes

towards her, and her alleged difficulties obtaining an

accommodation for the TCI exam.  At this stage, that is

enough -- particularly given the temporal proximity between

the protected activity and the suspension -- to establish

causation under her prima facie case, and thus the burden of

_____

[5]  Plaintiff also argues that the initial suspension
with pay and the rescinded termination are adverse actions.
However, neither impacted Plaintiff's pay, benefits, or
other objective term of employment.  Thus, these actions
cannot, as a legal matter, be deemed "adverse."

production shifts to Defendant.  <u>See</u> <u>Mariani-Colon v. Dep't</u>
<u>Homeland Sec.</u>, 511 F.3d 216, 224 (1st Cir. 2007).

    2.   <u>Legitimate, Non-Retaliatory Reason</u>

    Once Plaintiff presents her initial <u>prima</u> <u>facie</u> case,
the burden of production shifts to Defendant to provide a
legitimate, non-retaliatory reason for its decision.
<u>Hodgens</u>, 144 F. 3d at 160-61.  This burden is not onerous.
<u>Espinal v. Nat'l Grid NE Holdings 2, LLC</u>, 794 F. Supp. 2d
285, 292 (D. Mass. 2011).

    Defendant has presented evidence that it suspended
Plaintiff -- with, and then without, pay -- because she
failed to complete the TCI examination and then failed to
communicate with Defendant about returning to work.  (King
Letter, Dkt. No. 37, Ex. 12 at 2; Strong Letter, Dkt. No.
37, Ex. 13 at 2; Williams Dep. 275:20-276:4 & 284:12-16,
Dkt. No. 37, Ex. 2 at 32-33; Shanley Aff. ¶ 10, Dkt. No. 38
at 2.)  A reasonable juror could be persuaded by Defendant's
evidence, thereby pushing Defendant over this minimal
hurdle.

    3.   <u>Pretext</u>

The final burden of persuasion rests with Plaintiff. The question for the court at this stage is whether a genuine dispute of material fact exists on the question of pretext.  Plaintiff must "elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real [discriminatory] motive."  <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 9 (1st Cir. 1990).

In arguing that Defendant's proffered reason is a pretext, Plaintiff focuses on the timing of events and what she considers a valid justification for refusing to take the exam on October 7.  Moreover, she believes that Mr. Strong's improper decision to terminate Plaintiff on October 7 -- one that was done outside of normal procedures and was then rescinded -- shows retaliation.

Several problems are fatal to these contentions. First, Plaintiff does not provide any evidence disputing Defendant's stated reason for its decision.  No evidence undermines Defendant's contention that Plaintiff failed to complete and pass the TCI examination.  Indeed, the undisputed evidence shows that Plaintiff failed to even sit

for the entire test. The absence of evidence attacking Defendant's justification leaves its proffered reason unrebutted. <u>Matthews v. Ocean Spray Cranberries, Inc.</u>, 426 Mass. 122, 128 (1997)(noting that the plaintiff must attack the defendant's reason as a pretext in order to prevail at the final stage of the analysis).

More critically, no evidence in the record suggests any retaliatory motive by Defendant. No evidence shows that Defendant treated similarly situated employees differently, or that the request for assistance played any role in the Defendants' determinations. <u>See</u> <u>Colburn v. Parker Hannifin/Nichols Portland Div.</u>, 429 F.3d 325, 338 (1st Cir. 2005). Nor does the fact that the initial termination decision was improper -- a decision that was made by a party significantly removed from the events alleged here -- show any retaliatory motive. Instead, the undisputed evidence shows that Defendant's decisions were directly tied to Plaintiff's refusal to take the TCI examination and her subsequent failure to communicate with Defendant.

Ultimately, a reasonable juror could not conclude that Defendant suspended Plaintiff because of her request for an

accommodation.  As such, Defendant is entitled to summary judgment on both retaliation counts.

C.   Wrongful Termination in Violation of Public Policy (Count V)

Plaintiff's final claim is for wrongful termination in violation of public policy.  Here, she must establish: (1) that she was fired, (2) for doing what the law required her to do, refusing to violate the law, or asserting a legal right.  Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 477 (1992).

Plaintiff cannot move past the first hurdle.[6]  She concedes that she was not terminated in the traditional sense, but argues that she was "constructively discharged," and therefore satisfies the element.  To establish a constructive discharge, Plaintiff must show that her working conditions had become so difficult or unpleasant that a

_____

[6]  Plaintiff anchors the second element on her § 51A report.  Defendant takes issue with Plaintiff's claim that she acted in good faith in making that report, or that Defendant was on notice that she was the individual who made the report.  If the first question were unsettled, the claim would go to a jury as Plaintiff has testified that she believed, in good faith, that she was compelled to make the report, and that an employee told Plaintiff's boss that Plaintiff was the author.

-26-

reasonable person in the employee's shoes would have felt

compelled to resign.  Greenberg v. Union Camp Corp., 48 F.3d

22, 27 (1st Cir. 1995).  A court must look at the totality

of the evidence to determine whether the environment meets

this standard.  Ramos v. Davis & Geck, Inc., 167 F.3d 727,

731-32 (1st Cir. 1999).

Summary judgment on a wrongful discharge claim is

appropriate if no reasonable juror could conclude that the

plaintiff was subjected to a sufficiently harsh employment

environment.  For example, in Suarez v. Pueblo

International, Inc., 229 F.3d 49 (1st Cir. 2000), an

employee was forced to work overtime, was excluded from

meetings, and had his staff relocated.  Nonetheless, the

conditions of the plaintiff's employment had not altered

significantly and, as a result, an objectively reasonable

employee would not have felt compelled to resign.  See also

GTE Prod. Corp. v. Stewart, 421 Mass. 22 (1995)(concluding

that a single distressing event was insufficient to

establish a constructive discharge); contra Salvi v. Suffolk

Cnt'y Sheriff's Dept., 67 Mass. App. Ct. 596 (2006)(allowing

a claim to move forward where a plaintiff was subjected to

consistent slurs, was shunned by his co-workers, and was the victim of constant snickering on account of his sexual orientation).  The cases uniformly emphasize that the lynchpin is not whether a work environment is difficult, but whether it is so toxic that an objectively reasonable person would feel that he or she <u>had</u> to quit.  <u>Suarez</u>, 229 F.3d at 54 ("The workplace is not a cocoon, and those who labor in it are expected to have skins -- thick enough, at least, to survive ordinary slings and arrows that workers routinely encounter in a hard, cold world.").

Here, Plaintiff contends that Defendant's refusal to provide her an accommodation, and the difficulty she experienced pursuing her request, left her no choice but to resign.  She also contends that Ms. King was angry with her about the § 51A report, which also made her employment unbearable.

Even taking Plaintiff's version of events as true, the record lacks sufficient substance to permit this claim to move forward.  Plaintiff's complaints focus on a very limited period of time, and they amount to nothing more than frustration with her co-workers and employer.  Although

Plaintiff may have experienced some difficulties, the undisputed evidence also shows that Defendant attempted to work with Plaintiff: it provided her a number of opportunities to complete the examination, made accommodations for the exam itself, and only suspended her employment until she completed the TCI test or simply engaged in discussions regarding the matter with Defendant. Plaintiff's failure even to sit for the full examination, and then her refusal to discuss the matter with Defendant -- both obvious alternatives to quitting -- effectively undermine her claim of constructive discharge.

The evidence also does not substantiate Plaintiff's claim that she experienced hostility from her co-workers. Plaintiff vaguely complains about Ms. King's annoyance following the § 51A report.  However, Plaintiff has failed to provide specific evidence or discuss concrete events that would allow a jury to ground its conclusion in objective facts rather than Plaintiff's subjective interpretation of events.  At worst, Plaintiff had interpersonal conflicts with co-workers that made work difficult for a very limited period of time.

Accordingly, no reasonable employee would have felt compelled to quit under these circumstances.  As a matter of law, Plaintiff has failed to establish a necessary element of a constructive discharge and cannot move forward on this claim.

### IV.  CONCLUSION

For the foregoing reasons, the court hereby ALLOWS Defendant's Motion for Summary Judgment (Dkt. No. 34) and DENIES Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 45).

The clerk shall enter judgment for Defendant, and the case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge